IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MYRNA CLAYTON and | : | |
| ABEL II, INC., by its Trustee | : | |
| Myrna Clayton, | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION FILE |
| | : | NO.: 1:10-CV-0571-TCB-SSC |
| v. | : | |
| | : | |
| US BANK, N.A. as trustee for | : | |
| RASC2005KS11, TRANSLAND | : | |
| FINANCIAL SERVICES, GMAC | : | |
| MORTGAGE, LLC, HOMECOMINGS | : | |
| FINANCIAL SERVICES, LLC, | : | |
| MCCURDY AND CANDLER, LLC, | : | |
| ANTHONY DEMARLO and | : | |
| MORTGAGE ELECTRONIC | : | |
| REGISTRATION SYSTEMS, INC. | : | |
| (MERS), | : | |
| | : | |
| | : | |
| Defendants. | : | |

## FINAL REPORT AND RECOMMENDATION

This case is before the court on the motions to dismiss filed by Defendants

U.S. Bank N.A. ("U.S. Bank"), GMAC Mortgage, LLC ("GMAC"), Homecomings

Financial Services, LLC ("Homecomings") and Mortgage Electronic Registration

Systems, Inc. ("MERS") [Doc. 15] and Defendants McCurdy & Candler, LLC

("McCurdy & Candler") and Anthony DeMarlo ("DeMarlo") [Doc. 17].  For the

reasons discussed below, it is **RECOMMENDED** that Defendants' motions be

**GRANTED**.

# I. __Procedural Background__

On January 22, 2010, Myrna Clayton and Abel II, Inc., by its Trustee Myrna Clayton (hereinafter referred to as "Plaintiff" or "Clayton"), filed a complaint in the Superior Court of Fulton County, Georgia asserting claims against U.S. Bank, N.A., Johnson and Freedman LLC, Kyle S. Kotake, Transland Financial Services ("Transland"), GMAC Mortgage, LLC, Homecomings Financial Services, LLC,[1] McCurdy & Candler, LLC, Anthony DeMarlo and Mortgage Electronic Registration Systems, Inc. (See Compl. attached to Doc. 1).  Plaintiff asserts the following claims against the defendants: wrongful foreclosure (Count I); fraud (Count II); "dishonor in commerce: tendered offer ignored" (Count III); "accounting and failure to disclose" (Count IV)[2]; "civil RICO" (Count V); conversion (Count VI); breach of contract and theft (Count VII).  Plaintiff seeks damages, rescission of the loan transaction, a judgment setting aside the foreclosure of the subject property and granting Plaintiff "full and complete title," declaratory and injunctive relief, attorneys' fees and costs and punitive damages.

Defendants U.S. Bank, GMAC, Homecomings and MERS removed the complaint to the United States District Court for the Northern District of Georgia on February 26, 2010.  [Doc. 1].  Plaintiff has dismissed her complaint against

---

[1] Plaintiff originally named "Homecomings Financial," but she has amended her complaint to name "Homecomings Financial Services LLC."  (See Docs. 24 and 27).

[2] This count alleges violations of the Truth in Lending Act ("TILA"),  15 U.S.C. §§ 1601 et seq, the Real Estate Settlement Procedures Act ("RESPA"),  12 U.S.C. § 2601 et seq., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

Defendants Johnson and Freedman, LLC and Kyle S. Kotake. (See Docs. 11 and 13). It appears that Defendant Transland has not been served with the complaint as no proof of service or waiver of service has been filed with respect to Transland. Furthermore, the defendants attached to their Notice of Removal a copy of Articles of Dissolution filed with the Florida Secretary of State showing that Transland was dissolved as of June 25, 2008. (Ex. C within Ex. R to Doc. 1).

In lieu of answers, the remaining defendants filed the instant motions to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. [Docs. 15 and 17]. Plaintiff filed a response to the motions [Doc. 23], and Defendants U.S. Bank, GMAC, Homecomings and MERS filed a reply [Doc. 30].

## II.  **Background Facts**[3]

On July 13, 2000, Clayton acquired property located at 2325 Wilson Drive, Atlanta, Georgia by quitclaim deed. (Compl. at ¶ 12). On September 1, 2005, Clayton borrowed $188,000 from Transland in a loan transaction (see Ex. G to Compl.) ("the Loan"), and she signed a Security Deed which granted MERS and its successors and assigns the power of sale of the property at 2325 Wilson Drive in order to secure Clayton's obligations under the Loan (see Ex. A to Doc. 15,

---

[3] These facts are taken from Plaintiff's complaint and exhibits attached thereto, and from copies of documents referred to in the complaint, which are attached as exhibits to Defendants' motions to dismiss. On a motion to dismiss, the court may consider documents attached to the complaint as well as documents attached to the motion to dismiss if those documents are central to the complaint and not in dispute. See Harris v. Ivax Corp., 182 F.3d 799, 802 n. 2 (11th Cir. 1999).

Security Deed).  The Security Deed identifies Clayton as the Borrower, MERS as the nominee and grantee, Transland as the Lender, and 2325 Williams Drive, Atlanta, Georgia as the Property.  (Id. at 1-2).  By signing the Security Deed, Clayton agreed that:

> Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the . . . [P]roperty . . . .
>
> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all those interests, including, but not limited to, the right to foreclose and sell the Property . . . .

(Id. at 2).  The Security Deed further provides, in case of default by the Borrower, that:

> If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by the Borrower . . . . Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale . . . .  The power and agency granted are coupled with an interest [and] are irrevocable by death or otherwise . . . .

(Id. at 11).

Pursuant to the Security Deed, Clayton was prohibited from transferring title to the property without prior written authorization.  (Id. at 9).  The Security Deed also granted Transland the authority to transfer servicing rights and to transfer the Note and Security Deed.  (Id. at 10).

4

On or about July 2, 2009, Clayton sent several documents to Transland, Homecomings, GMAC and MERS, including a "Due Presentment Under Notary Seal," a Notice of Right to Cancel, an Affidavit signed by Clayton, an Addendum to Right to Cancel, a Notice of Revocation of Power of Attorney and a Notice of Removal of Trustee.  (<u>See</u> Exs. B and C to Compl.).

On July 3, 2009, Defendants McCurdy & Candler and DeMarlo, acting as counsel for MERS (the creditor) and GMAC (the loan servicer), informed Clayton that she was in default on the Loan in the amount of $258,103.01, and that her failure to remit payment in the amount due on the Loan could result in foreclosure proceedings.  (Compl. at ¶ 19 and Ex. D to Compl.).  McCurdy & Candler also provided Clayton with notice of the foreclosure sale of the property set for August 4, 2009.  (Ex. E to Compl.).  These notifications stated that GMAC was the servicer of the loan and that MERS was the creditor.  (Exs. D and E to Compl.).

On July 8, 2009, Clayton mailed a letter to McCurdy & Candler purporting to "fire" them.  (Ex. J to Compl.).

On July 16, 2009, McCurdy & Candler provided a payoff quote to Clayton, specifically explaining that the foreclosure could be avoided if $263,309.12 was delivered in the form of a certified check or a money order to the firm's office by 2:00 p.m.  on August 3, 2009.  (Compl. at ¶ 28; Ex. E to Doc. 115).  In response, Clayton stamped the letter "accepted for value and returned for value."  (Compl. at ¶ 46; Ex. E to Doc. 115).

On July 21, 2009, Clayton returned a "Notice of Conditional Acceptance" to McCurdy & Candler, which read in part, "I received your offer, and conditionally Accept for Value upon Proof of Claim." (Ex. 1 to Compl.). The "Notice" also asked to view the "Original Promissory Note with my wet ink signature . . . ." (Id.). On July 29, 2009, Clayton executed a quitclaim deed to the Property from herself to "Abel II, Inc.," an alleged non-profit organization and the co-plaintiff in this action (Compl. at ¶¶ 38, 49 and Ex. K to Compl.), in spite of the fact that the Security Deed prohibited her from transferring the Property without prior written authorization. (Ex. A to Doc. 15, Security Deed, at 9). The quitclaim deed described Clayton as "Grantor, Myrna A. Clayton (Trustees)." (Ex. K to Compl.).

On August 25, 2009, Clayton recorded a document entitled "Full Reconveyance" in the Fulton County Clerk's Office. (Ex. L to Compl.). That document recites that the Security Deed was satisfied on July 29, 2009 "for consideration of $376,000.00 USD" and that "satisfaction/payment [had been] made to: Transland Financial Services, Homecomings Financial, GMAC Mortgage, MERS, and US Bank." (Id.). Clayton signed the document, which includes the language, "Clerk of Superior Court is authorized and directed to cancel the above referenced deed of record as prescribed in Code Section 44-14-4 of the O.C.G.A. for mortgage cancellation." (Id.).[4]

Meanwhile, on or about August 4, 2009, the Property was sold at a

---

[4] There is nothing in the record to indicate that the Security Deed had in fact been satisfied as indicated in this document.

foreclosure sale and was purchased by Defendant U.S. Bank.  (Ex. Q to Compl.).

## III.  **Discussion**

### A.  **Failure to State a Claim Upon Which Relief Can be Granted**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants move to dismiss Plaintiff's complaint in its entirety for failure to state a claim upon which relief can be granted.  Defendants US Bank, GMAC, Homecomings and MERS argue that "Plaintiff's Complaint is a debt elimination scheme lawsuit combined with an assortment of baseless claims and was filed solely for the purpose of avoiding foreclosure of the property and/or extinguishing a valid debt."  (Doc. 15, Def. Br. at 7-8).  Defendants McCurdy & Candler and DeMarlo argue that Plaintiff's complaint should be dismissed because "Plaintiff's allegations are entirely speculative and fail to state a claim."  (Doc. 17, Def. Br. at 8).

### 1.  **Applicable Standards**

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  In order to state a claim that can survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Iqbal, 129 S. Ct. at 1949-50.  To be plausible, the complaint

7

must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." Id. at 1950.

To survive a motion to dismiss, a complaint "does not need detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557). Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and parenthetical material omitted); see also Boyd v. Peet, 249 F. App'x 155, 157 (11th Cir. 2007) (unpublished decision) (explaining, on review of the district court's order granting a motion for judgment on the pleadings, that "[t]he complaint's allegations must plausibly suggest that the defendant has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff's complaint should be dismissed," and citing Twombly, 127 S. Ct. at 1965).

## 2.   **Plaintiff's Complaint**

The undersigned finds that Plaintiff's complaint fails to state a claim upon which relief may be granted. In general, the complaint is replete with conclusory and often nonsensical allegations that do not support a claim against these Defendants, as discussed in greater detail *infra*.

8

Plaintiff's allegations, as well as the documents related to the transactions at issue in this case–particularly documents Clayton created, such as the "Due Presentment Under Notary Seal" and attached notices (Exs. B and C to Compl.), the quitclaim deed of the property at issue to a "trust" (Ex. K to Compl.) and the recorded "Full Reconveyance" indicating that the Security Deed had been satisfied (Ex. L to Compl.)–are similar to those in cases where the plaintiffs (often unrepresented) filed similar lawsuits in an effort to delay, prevent or even reverse foreclosures and avoid debts owed.[5]   Such lawsuits–wherein the plaintiffs often make rambling, incomprehensible and/or conclusory allegations about mortgage industry practices in general, demand to see the original note or contend that the

---

[5] In fact, similar allegations have supported criminal prosecutions for those who perpetrate such debt avoidance schemes. In <u>United States v. Johnson</u>, No. CR 05-0611 WHA, 2008 U.S. Dist. LEXIS 8947, at *3-4 (N.D. Cal. Jan. 24, 2008), the defendants were promoters of a "debt elimination" program; the "client borrowers," who paid the promoters a fee, were individuals who obtained loans secured by their homes.   The court described the scheme as follows:

> The property of the client borrowers was placed into "family trusts," with defendants as the trustees, who would then mail **'presentment packets'** to lenders. These 'presentment packets' were thick and full of 'gobbledygook,' as one lender testified. Among many other things, the packet demanded that the lender prove the validity of the loan within ten days . . ., or else . . . defendants would automatically become trustees for the lender.   When the lender ignored or rejected the 'presentment packet,' defendants would file a substitution-of-trustee form at the county recorder's office.   The lender was not given notice of the filing.   This was fraudulent, of course, for the lender had not authorized defendants to act as its agents.   The lender was not given notice of the filing.

> Now as self-proclaimed agents for the lender, defendants further filed a **full reconveyance** of the property back to the family trust, reciting that the loan had been paid in full.   This was the centerpiece of the fraud.   Defendants wrongfully stated that the original lender had been paid in full and therefore had no further interest in the property.

<u>Id.</u> (emphasis added).

lender did not really lend "money" and that the borrower is actually the lender, such as in the instant case–have become far too commonplace. See, e.g., Curtis v. BAC Home Loans Servicing, LP, No. 5:10-CV-226-MTT, 2010 U.S. Dist. LEXIS 109400, at *3-5 and n.1 (M.D. Ga. Oct. 14, 2010) (finding that "the vast majority of the Plaintiff's allegations [related to a residential mortgage loan transaction and similar to those made in the instant case] are wholly incomprehensible" and noting that seven cases on that Judge's docket used virtually the same form complaint); Watts v. Ocwen Loan Servicing, LLC, No. 5:10-cv-238 (CAR), 2010 U.S. Dist. LEXIS 73486, at *1, 4 (M.D. Ga. July 21, 2010) (finding that the plaintiff's lawsuit, "the latest in a series of lawsuits filed in his effort to forestall foreclosure," was "largely incomprehensible," and "appears to be nothing more than an attempt to use frivolous and abusive litigation to forestall a lawful foreclosure so that Plaintiff can continue to live in a house that he has occupied, rent-free, for twenty-two months.")[6]; see also Bukhari v. Direct Mortg. Corp., No. 2:10-cv-00373-GMN-LRL, 2010 U.S. Dist. LEXIS 59791, at *6-7 (D. Nev. June 16, 2010).  In Bukhari, the court observed:

> The Complaint itself consists primarily of a lengthy generalized grievance against the banking and mortgage industries.  There is no allegation that Plaintiff is not in default or of any statutory irregularity in foreclosure.  The arguments in the Complaint have been seen in this Court many times before and were likely compiled

---

[6] The plaintiff in Watts advanced theories similar to those advanced by Plaintiff in the instant case: "(1) that the assignment of the loan to Defendant was somehow wrongful or fraudulent; and (2) that the security interest was void because Defendant failed to produce the original Note and Security Deed to Plaintiff."  Watts, 2010 U.S. Dist. LEXIS 73486, at *2.

from various Internet sources.  The Complaint does not intelligibly allege any defects in the present foreclosure except the oft-repeated claim that the bank is not a holder in due course of the relevant promissory note.

Id.

The undersigned finds the instant complaint is similarly deficient.  It consists largely of conclusory assertions of questionable legal relevance and fails to state with specificity the facts alleged in support of Plaintiff's claims; where "facts" are alleged, they do not support the claims Plaintiff asserts.  Clayton's complaint generally contains no more than "labels and conclusions," Twombly, 550 U.S. at 555, and "naked assertion[s] devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949 (internal quotation omitted).  The undersigned finds that Plaintiff has failed to satisfy the pleading requirements of Rule 8, Twombly and Iqbal.  Accordingly, it is **RECOMMENDED** that Defendants' motions to dismiss Plaintiff's complaint in its entirety for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), be **GRANTED**.

Alternatively, the undersigned considers each of Plaintiff's claims separately and recommends that Plaintiff's claims be dismissed, for the reasons discussed below.  In evaluating her claims, the undersigned notes that Plaintiff's complaint is a "typical 'shotgun' pleading" of the type condemned by the Eleventh Circuit. See Thompson v. RelationServe Media, Inc., 610 F.3d 628, 650 (11th Cir. 2010).[7]

---

[7] In Thompson, Judge Tjoflat, in an opinion concurring in part and dissenting in part with the panel majority, explained the Eleventh Circuit's view of "shotgun" pleadings:

By incorporating each fact asserted in support of each of her claims, Plaintiff has not satisfied the requirements of Fed. R. Civ. P. 8(a)(2) that a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." It is not clear from the face of the complaint which alleged facts are material to which claims. To the extent that Plaintiff sets forth allegations in her statement of each individual count, the undersigned has considered whether those allegations are sufficient to state the claim asserted. The undersigned declines to speculate about whether Plaintiff intended to assert other allegations scattered throughout her complaint in support of her various claims, however.

## B.   <u>Wrongful Foreclosure (Count I)</u>

Plaintiff alleges that:

---

The complaint was a typical "shotgun" pleading, in that each count incorporated by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged were not material to the claim, or cause of action, appearing in a count's heading. This circuit condemns shotgun pleadings. See, e.g., <u>Pelletier v. Zweifel</u>, 921 F.2d 1465, 1518 (11th Cir. 1991) ("Anyone schooled in the law who read these [shotgun pleading] complaints . . . [] would know that many of the facts alleged could not possibly be material to all of the counts. Consequently, [the opposing party] and the district court [have] to sift through the facts presented and decide for themselves which [are] material to the particular cause of action asserted, a difficult and laborious task indeed."); see also <u>Davis v. Coca-Cola Bottling Co.</u>, 516 F.3d 955, 984 (11th Cir. 2008) (refusing to award attorneys' fees in a Title VII case because the use of shotgun pleadings "complicated [appellate review] to no end"); <u>M.T.V. v. DeKalb County Sch. Dist.</u>, 446 F.3d 1153, 1156 n.1 (11th Cir. 2006) (noting that shotgun pleadings are "frowned upon in this circuit"); <u>Byrne v. Nezhat</u>, 261 F.3d 1075, 1131 (11th Cir. 2001) ("Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice."); <u>Beckwith v. City of Daytona Beach Shores, Fla.</u>, 58 F.3d 1554, 1567 (11th Cir. 1995) ("The bar would be better served by heeding this advice: 'In law it is a good policy never to plead what you need not, lest you oblige yourself to prove what you cannot.' ") (quoting Abraham Lincoln, Letter to Usher F. Linder, Feb. 20, 1848, in The Quotable Lawyer 241 (D. Shrager & E. Frost eds., 1986)).

610 F. 3d. at 650 n.22. These observations apply to the plaintiff's complaint in this case as well.

> Due to multiple violations of Georgia foreclosure statutes including lack of Proof of Claim, dishonoring a valid tender, fraud, misrepresentation, denial of equity of redemption, bad faith in a legal transaction, illegal and unlawful deficiency action, and lack of good faith sale at illegal foreclosure sale, DEFENDANTS did not have the right to foreclosure and did not own the property, therefore a wrongful foreclosure ensued.

(Compl. at ¶ 68).

In order to state a claim for wrongful foreclosure, Plaintiff must show that Defendants violated Georgia's foreclosure statutes. McCarter v. Bankers Trust Co., 543 S.E.2d 755, 758 (Ga. App. 2000) (explaining that "a violation of the [foreclosure] statute is necessary to constitute a wrongful foreclosure" and citing O.C.G.A. §§ 23-2-114 and 44-14-160 et seq.).

Plaintiff asserts the following in support of her wrongful foreclosure claim:

• prior to the foreclosure, Plaintiff "released" McCurdy & Candler and DeMarlo as "Attorney-in-Fact," and "thus, they have fraudulently misrepresented Plaintiff" (Compl. at ¶ 45; see also ¶ 55);

• in response to GMAC's July 16, 2009 "offer to settle," Plaintiff "lawfully tendered an 'Acceptance for Value' offer to [GMAC] upon Proof of Claim as indicated by blue wet ink signature that [GMAC] was in fact holder of the Original Promissory Note" (Compl. at ¶ 46);

• GMAC "did not honor Plaintiff's right to equity in redemption" (Compl. at ¶ 47);

• GMAC "showed bad faith due to not providing the single necessary element requested to close the deal and honor the transaction as valid[; t]hey did not

13

show that they were the holder in due course" (Compl. at first ¶ 48);

•   GMAC "failed and refused to show Proof of Claim as evidenced by the Original blue wet ink signature Promissory Note thus breaching the contract" (Compl. at second ¶ 48);

•   GMAC "failed to provide PROOF OF CLAIM ultimately allowing collusion purchase of property at a substantially reduced amount ($31,900.75) and far below its stated market value" (Compl. at ¶ 53).

The undersigned finds that none of these allegations is sufficient to state a claim for wrongful foreclosure or to show that Defendants violated the foreclosure statute.

## 1.   **"Release" of McCurdy & Candler and DeMarlo**

Plaintiff's assertion that McCurdy & Candler and DeMarlo continued to "misrepresent" her even though she had "released" them or terminated their representation (see Ex. J to Compl.) is wholly without merit.   The Security Deed expressly provided that MERS was granted the power of sale and  had "the right to foreclose and sell the Property . . . ."  (Ex. A to Doc. 15 at 2). Nothing in the Security Deed authorized Plaintiff to unilaterally "revoke" that right.[8]  McCurdy & Candler and DeMarlo then represented MERS in the foreclosure proceedings (see Ex. E to Compl.); Plaintiff's attempt to "fire" McCurdy & Candler and DeMarlo had no legal effect on their representation, nor did McCurdy & Candler and DeMarlo's

---

[8] The Security Deed expressly provided that "Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale . . . .  The power and agency granted are coupled with an interest [and] are irrevocable by death or otherwise . . . ." (Ex. A to Doc. 15 at 11).

representation of MERS during the foreclosure proceedings make the foreclosure wrongful.

### 2.   **"Dishonoring a Valid Tender"/Failure to Produce Note**

Plaintiff makes several assertions about GMAC that are conclusory and/or indecipherable; they fail to show a violation of the Georgia foreclosure statutes. Among these assertions are that in response to GMAC's July 16, 2009 "offer to settle," Plaintiff "lawfully tendered an 'Acceptance for Value' offer to [GMAC] upon Proof of Claim as indicated by blue wet ink signature that [GMAC] was in fact holder of the Original Promissory Note" (Compl. at ¶ 46) and that GMAC "did not honor Plaintiff's right to equity in redemption" (Compl. at ¶ 47);

Plaintiff's essential complaint appears to be that GMAC was required to show her the original promissory note with her "wet ink" signature.  However, Plaintiff's "produce the note" argument "ha[s] been rejected by this court and by other courts." Watkins v. Beneficial, HSBC Mortg., No. 1:10-CV-1999-TWT-RGV, 2010 U.S. Dist. LEXIS 112857, at *15 (N.D. Ga. Sept. 1, 2010), adopted by 2010 U.S. Dist. LEXIS 112848 (N.D. Ga. Oct. 21, 2010).  "In fact, nothing in Georgia law requires a lender commencing foreclosure proceedings to produce the original note." Id. (citing O.C.G.A. §§ 9-13-140 et seq., 9-13-160 et seq., and 44-14-160 et seq.; Webb v. SunTrust Mortg., Inc., No. 1:10-CV-0307-TWT-CCH, 2010 U.S. Dist. LEXIS 75443 (N.D. Ga. July 1, 2010), adopted by 2010 U.S. Dist. LEXIS 75432 (N.D. Ga. July 23, 2010)); see also In re Truitt, 11 B.R. 15, 18 (Bankr. N.D. Ga. 1981) (finding that "the deed to secure debt held by Defendant is not

unenforceable due to Defendant's failure to produce the note representing the underlying obligation").[9]

### 3. __Sale of Property for Below Market Value__

Plaintiff has failed to show that Defendants violated the foreclosure statutes by selling (and purchasing) the subject property through the foreclosure sale at a price of $31,900.75, which she alleges was "far below its stated market value." (Compl. at ¶ 53). This allegation is conclusory and is also otherwise insufficient to support Plaintiff's wrongful foreclosure claim.   In Giordano v. Stubbs, 184 S.E.2d 165 (Ga.), cert. denied, 405 U.S. 908 (1971), the Georgia Supreme Court explained:

> Inadequacy of price paid upon the sale of property under power [of sale] will not of itself and standing alone be sufficient reason for setting aside the sale.   It is only when the price realized is grossly inadequate and the sale is accompanied by either fraud, mistake, misapprehension, surprise or other circumstances which might authorize a finding that such circumstances contributed to bringing about the inadequacy of price that such a sale may be set aside by a court of equity.

184 S.E.2d at 168-69.  Even assuming *arguendo* that the "price realized" in this case was "grossly inadequate," Plaintiff has failed to allege facts to show that "the sale [was] accompanied by either fraud, mistake, misapprehension, surprise or

---

[9] The undersigned notes that Plaintiff also appears to question MERS' authority to foreclose on the property.  She alleges that: Plaintiff received collection notices from McCurdy & Candler "stating they were representing Defendant MERS as the Creditor of the loan," but "Plaintiff believes Defendant MERS was and is only a 'Nominee' under a Security Deed and could not be a creditor as no payments have ever been  collected by Defendant MERS from Plaintiff" (Compl. at ¶ 19); and "Power of Attorney for Myrna Clayton that was held by Defendant MERS was rescinded and revoked on July 2, 2009" (Compl. at ¶ 23).  However, by the express terms of the Security Deed, MERS had the right to foreclose and sell the subject property.  (Ex. A to Doc. 15 at 2).  Plaintiff's purported "revocation" did not affect that right.

other circumstances" that contributed to the alleged inadequacy.  See, e.g., Stamps v. Ford Motor Co., 650 F. Supp. 390, 400 (N.D. Ga. 1986) (dismissing plaintiffs' *Giordano* claims even though foreclosure sale did not bring fair market value because "even if the Court assumes *arguendo* that plaintiffs could establish that the price obtained was 'grossly inadequate,' plaintiffs have failed to satisfy the second prong of the *Giordano* test" as "plaintiffs have not suggested any way in which the sale itself was infected with improper conduct.").

Plaintiff's conclusory allegations of wrongdoing fail to show that Defendants violated Georgia's foreclosure statutes, and thus, Plaintiff has failed to state a claim for wrongful foreclosure.  Therefore, it is **RECOMMENDED** that Defendants' motions to dismiss Plaintiff's wrongful foreclosure claim (Count I) be **GRANTED**.

## C.    **Fraud (Count II)**

In order to establish a fraud or fraudulent inducement claim under Georgia law, a plaintiff must prove the following elements: "(1) false representation, (2) scienter, (3) intention to induce the plaintiff to act or to refrain from acting, (4) justifiable reliance, and (5) damages."  JTL Consulting, LLC v. Mendenhall, No. 1:04-CV-3459-JOF, 2007 U.S. Dist. LEXIS 20261, at *34 (N.D. Ga. Mar. 20, 2007); see also Morrison v. ExxonMobil Corp. Constr. Millwright, Inc., No. 1:03-CV-140 (WLS), 2005 U.S. Dist. LEXIS 36117, at *16 (M.D. Ga. Sept. 28, 2005) (noting that "[a]s with basic fraud claims, fraudulent inducement includes the five elements of fraud").  When such a state law claim is brought in federal court, the requirement of Fed. R. Civ. P. 9(b) that "[i]n alleging fraud . . . , a party must state

17

with particularity the circumstances constituting fraud" applies; see also Barrett v. Scutieri, 281 F. App'x 952, 953 (11th Cir. 2008) (unpublished decision) (requiring plaintiff in diversity action to satisfy the elements of fraud under Florida law as well as Rule 9(b)'s requirement that plaintiffs "plead with particularity the circumstances constituting fraud").  Fed. R. Civ. P. 9(b) may be satisfied if the complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and
> (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and
> (3) the content of such statements and the manner in which they misled the plaintiff, and
> (4) what the defendants obtained as a consequence of the fraud.

Brooks v. Blue Cross & Blue Shield, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotation omitted).

Plaintiff makes several allegations in support of her fraud claims, most of which she also makes with respect to her wrongful foreclosure claim: Defendants have not produced the "original wet ink signature note"; Plaintiff "released, rescinded, and revoked any power of attorney allegedly held" by McCurdy & Candler and DeMarlo and they "fraudulently misrepresented" her; Plaintiff "released, rescinded, and revoked any power of attorney allegedly held" by MERS; neither GMAC or MERs has established its "position as owner of the Note," and "neither is 'holder in due course' "; MERS "was and is only a 'Nominee' under a Security Deed and could not be a creditor as no payments have ever been

collected by Defendant MERS from Plaintiff," and therefore, "MERS is Fraudulently Misrepresenting itself as a Creditor for undeserved gain" and "has Misrepresented their ownership of the subject property by Assignment of an unenforceable instrument"; U.S. Bank "is clearly misrepresenting itself as the owner of the property without legal standing to bring any action against Plaintiff, or her property as there is no contract or enforceable instrument recorded that gave Defendant US Bank N.A. standing to assign Defendant MERS legal title"; U.S. Bank "knowingly and willfully conveyed a non-existent Note and Security Deed to Defendant MERS . . . without an enforceable instrument"; GMAC "knowingly and willfully did fraudulently act as Attorney-in-Fact for Defendant US Bank N.A. as transfer agent of an unenforceable instrument"; GMAC "knowingly and willfully did fraudulently convey to Defendant US Bank N.A. a fraudulent Foreclosure Deed . . . thus acting for and on behalf of the Assignor and Assignee in both transactions unjustly enriching each Defendant"; the same persons acted as signing officers for MERS and GMAC; MERS does not hold title "with respect to the rights conveyed by the borrower to the lender"; and Plaintiff "tendered an acceptance for value offer only to discover NO PROOF OF CLAIM." (See Compl. at ¶¶ 81-93) (some original formatting altered).  Plaintiff concludes:

> Defendants, individually and jointly, have deceitfully committed Fraud due to multiple incidents of misrepresenting Plaintiff, illegal transfer of unenforceable instruments, illegal conveyance of note and security deed, bad faith in alleged foreclosure sale, illegal standing to foreclose, misrepresenting position in commerce, and filing erroneous documents in public records.

(Compl. at ¶ 94).

For the same reasons discussed in the analysis of Plaintiff's wrongful foreclosure claim, the undersigned finds that Plaintiff's conclusory and, for the most part, incomprehensible, allegations of wrongdoing fail to state a claim for fraud. Plaintiff has failed to state facts to support all of the elements of her fraud claim, and she has failed to satisfy Rule 9(b)'s requirement that her fraud claims be pled with particularity. Accordingly, it is **RECOMMENDED** that Defendants' motions to dismiss Plaintiff's fraud claim (Count II) be **GRANTED**.

**D.    "Dishonor in Commerce: Tendered Offer Ignored" (Count III)**

This "claim," which has no basis in law, is simply a reiteration of Plaintiff's allegations discussed *supra*. Plaintiff has failed to state a claim, even if such a claim actually exists, for the reasons already discussed. Accordingly, it is **RECOMMENDED** that Defendants' motions to dismiss Plaintiff's "Dishonor in Commerce: Tendered Offer Ignored" claim (Count III) be **GRANTED**.

**E.    "Accounting and Failure to Disclose" (Count IV)**

**1.    "Vapor Money" Allegations**

In paragraphs 113 through 116 of her complaint, Plaintiff appears to call into question the existence or validity of the loan itself. Essentially, she argues that she is the "alleged borrower and the party who funded the loan," and Transland actually received a loan. She contends that Transland "received Plaintiff['s] Promissory Note for free, new money, credit or the money equivalent was created," and that Plaintiff "funded her o[w]n loan with her Promissory Note";

that "[t]he party who provided the asset to give value to the check that is claimed to be lent to the alleged borrower (PLAINTIFF) is the same alleged borrower and the party who funded the loan"; and that "[u]pon repayment of this alleged loan the party who funded the loan (PLAINTIFF) is not to be repaid the money by [Transland]."  (Compl. at ¶¶ 113-16).

This "theory" is referred to in the case law as the "vapor money" or "unlawful money" theory, and it has been repeatedly and uniformly rejected by the courts. In Demmler v. Bank One NA, No. 2:05-cv-322, 2006 U.S. Dist. LEXIS 9409, at *10 (S.D. Ohio Mar. 9, 2006) the court considered allegations virtually identical to those made in the instant case: "Plaintiff alleges that the promissory note he executed is the equivalent of 'money' that he gave to the bank.  He contends that Bank One took his 'money,' i.e., the promissory note, deposited it into its own account without his permission, listed it as an 'asset' on its ledger entries, and then essentially lent his own money back to him."   The court considered the allegations "patently ludicrous" and noted that "[s]imilar arguments have been rejected by federal courts across the country."  Id. at *11 (listing cases); see also Thomas v. Countrywide Home Loans, No. 2:09-CV-00082-RWS, 2010 U.S. Dist. LEXIS 29553, at *4 (N.D. Ga. Mar. 29, 2010) (referring to "vapor theory" or "unlawful money" theory as "frivolous" and adopting the court's analysis in Thomas v. Countrywide Home Loans, Civil Action No. 1:09-CV-1386-WBH (N.D. Ga. Sept. 15, 2009), where the court noted the unanimous rejection of the theory and observed that the theory "is viable only if the Court accepts Plaintiff[s']

21

assertion that when they gave Countrywide the promissory note, they gave it their 'money,' which Countrywide simply lent back to them." (citing <u>Demmler</u>, 2006 U.S. Dist. LEXIS 9409)).[10]

Accordingly, it is **RECOMMENDED** that, to the extent that Plaintiff's "Accounting and Failure to Disclose" claim rests on the allegations set forth in paragraphs 113 to 116 of her complaint, that claim be **DISMISSED**.

## 2.    TILA/RESPA/FDCPA

Plaintiff also asserts in Count IV that she "seeks recovery for non-disclosure of certain Truth in Lending Disclosures and Federal violations of numerous consumer rights relative to the TILA, RESPA, and FDCPA disclosures which were fraudulently concealed from the PLAINTIFF by DEFENDANT [TRANSLAND,] disregarding constitutional requirement of due process." (Compl. at ¶ 117). The undersigned finds first, that Plaintiff's conclusory allegations in support of her claim that Defendants violated these statutes (<u>see</u> Compl. at ¶¶ 117-23) fail to state a claim upon which relief can be granted. Moreover, as discussed *infra*, Plaintiff's TILA, RESPA and FDCPA claims fail as a matter of law.

### a.    TILA

Congress enacted TILA "to assure a meaningful disclosure of credit terms

---

[10] The undersigned is troubled by the inclusion of so many discredited claims and incomprehensible allegations in Plaintiff's complaint, particularly in light of the fact that the complaint was filed on Plaintiff's behalf by an attorney. As discussed *supra*, the complaint is similar to those filed by numerous *pro se* plaintiffs who appear to be using "form" complaints drafted by non-lawyers in an effort to delay or stop foreclosure proceedings. Plaintiff, and particularly her counsel, are reminded of the requirements of Fed. R. Civ. P. 11.

so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . ." 15 U.S.C. § 1601(a); see also Household Credit Servs., Inc. v. Pfennig, 541 U.S. 232, 235 (2004) (Congress enacted TILA "in order to promote the 'informed use of credit' by consumers" (quoting 15 U.S.C. § 1601(a))).  Damages claims under TILA for non-disclosure must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).  The date of the occurrence of the alleged violation, i.e., the closing date, was September 1, 2005.  See In re Smith, 737 F.2d 1549, 1552 (11th Cir. 1984) ("The violation 'occurs' when the transaction is consummated.").  Thus Plaintiff was required to bring her claim for damages under TILA no later than September 1, 2006.  Plaintiff's TILA claim for damages, filed January 22, 2010, is therefore barred by the one-year statute of limitations.[11]

To the extent that Plaintiff seeks rescission of the loan transaction for

---

[11] The undersigned acknowledges that "TILA's limitations period is subject to equitable tolling . . . in cases where the debtor has been prevented from bringing suit due to inequitable circumstances." Velardo v. Fremont Inv. & Loan, 298 F. App'x 890, 892 (11th Cir. 2008) (unpublished decision) (citing Ellis v. GMAC, 160 F.3d 703, 706 (11th Cir. 1998)).  But equitable tolling is "an extraordinary remedy which should be extended only sparingly," and "[t]he burden is on the plaintiff to show that equitable tolling is warranted." Justice v. United States, 6 F.3d 1474, 1479 (11th Cir. 1993).  "The TILA statute of limitations may be equitably tolled where a defendant has fraudulently concealed the cause of action from the plaintiff." Carrillo v. Bank of New York, No. 09-61642-CIV-UNGARO, 2009 U.S. Dist. LEXIS 124987, at *7 (S.D. Fla. Dec. 20, 2009) (citing Ellis, 160 F.3d at 708).  However, courts have denied equitable tolling " '[w]here a plaintiff relies . . . on the same allegations of fraud which constitute the TILA violation (such as failing to disclose certain finance charges) to prove fraudulent concealment' because 'if failure to make TILA disclosures also tolled the limitations period for pursuing TILA claims,then the statute of limitations would be rendered meaningless because those non-disclosures are the very essence of a TILA violation in the first place.'" Id. at *7-8 (quoting Grinke v. Countrywide Home Loans, Inc., No. 08-23383-CIV, 2009 U.S. Dist. LEXIS 82655, at *6-7 (S.D. Fla. Aug. 24, 2009)).

The undersigned finds that Plaintiff has not alleged facts that show that the TILA limitations period should be equitably tolled.

23

alleged TILA violations, that claim is also barred as untimely.  Section 1635(f) of 15 U.S.C. provides in relevant part that "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this chapter have not been delivered to the obligor . . . ."  Equitable tolling does not apply to TILA rescission claims because "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period."  Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998).  Because Plaintiff brought this complaint more than three years after the closing date of the transaction, any TILA rescission claim is barred.

**b.    RESPA**

Congress passed RESPA "to effect certain changes in the settlement process for residential real estate," including, among other things, the provision of "more effective advance disclosure to home buyers and sellers of settlement costs," and "the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services . . . ."  12 U.S.C. § 2601(b).  Plaintiff does not state how Defendants allegedly violated RESPA, or specify the particular section of RESPA at issue, and therefore, Plaintiff has failed to state a claim under RESPA upon which relief can be granted.[12]

---

[12] Plaintiff's failure to identify the particular RESPA violations is significant because not all violations of RESPA give rise to a private cause of action.  For example, RESPA does not provide for a private cause of action for violations of 12 U.S.C. § 2604.  See Collins v. FMHA-USDA, 105

Furthermore, any RESPA claim arising from the loan transaction at issue is barred as untimely.  Section 2614 of 12 U.S.C. provides that actions for alleged violation of sections 8 and 9 of RESPA (12 U.S.C. §§ 2607 and 2608) must be brought within one year of the alleged violation, and actions for violation of section 6  (12 U.S.C. § 2605) must be brought within three years of the alleged violation.  Thus Plaintiff was required to bring her RESPA claim no later than, at most, three years from the date of the alleged violation.   Because the loan transaction occurred on September 1, 2005, any RESPA claim arising from that transaction became time-barred after September 1, 2008.   Plaintiff did not file the instant complaint until January 22, 2010, and her RESPA claim is thus time-barred.

### c.   **FDCPA**

The FDCPA "was intended by Congress to eliminate abusive debt collection practices by debt collectors, and to promote consistent state action to protect consumers against debt collection abuses."  <u>Hennington v. Greenpoint Mortg. Funding, Inc.</u>, No. 1:09-CV-00676-RWS, No. 1:09-CV-00962-RWS, 2009 U.S. Dist. LEXIS 41343, at *15 (N.D. Ga. May 15, 2009) (citing 15 U.S.C. § 1692, *et seq.*). Plaintiff's complaint, which makes only vague and conclusory allegations that Defendants violated the FDCPA, fails to state a claim for violation of FDCPA. (<u>See</u>

---

F.3d 1366, 1367-68 (11th Cir.) (noting that 12 U.S.C. § 2604(c) does not explicitly authorize a private remedy and finding that there also is no "implied private civil remedy" under that section for failure to provide a good faith estimate), <u>cert. denied</u>, 521 U.S. 1144 (1997); <u>see also</u> <u>Martin v. Citimortgage</u>, No. 1:10-CV-00656-TWT-AJB, 2010 U.S. Dist. LEXIS 88447, at *20 (N.D. Ga. Aug. 3, 2010) ("Courts have uniformly concluded that an individual cannot bring a civil action when a lender fails to provide [the special information] booklet because RESPA does not authorize such a suit." (listing cases)), <u>adopted by</u> 2010 U.S. Dist. LEXIS 88677 (N.D. Ga. Aug. 25, 2010).

Compl. at ¶ 117).  She fails to identify what sections of that act Defendants allegedly violated or how they allegedly violated those sections.  See Buckley v. Bayrock Mortg. Corp, No. 1:09-CV-1387-TWT-RGV, 2010 U.S. Dist. LEXIS 10636, at *20-22 (N.D. Ga. Jan. 12, 2010) (finding that the plaintiff's "vague and conclusory allegations of violations of the FDCPA are not sufficient to withstand a motion to dismiss" and noting that the plaintiff "does not specify which sections of the FDCPA any of the defendants allegedly violated, nor does he allege facts in the complaint establishing that the defendants actually violated the FDCPA."), adopted by 2010 U.S. Dist. LEXIS 10632 (N.D. Ga. Feb. 5, 2010).

Furthermore, that claim fails as a matter of law with respect to creditors and servicers because the FDCPA "applies only to debt collectors and not to creditors or mortgage servicers." Humphrey v. Wash. Mut. Bank, F.A., No. 1:06-CV-1367-JOF, 2007 U.S. Dist. LEXIS 40279, at *4 (N.D. Ga. June 1, 2007).  The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).  The creditor and loan servicer defendants in this case "were not debt collectors because they were attempting to collect their own debt from Plaintiff." Hennington, 2009 U.S. Dist. LEXIS 41343, at *16.

Accordingly, Plaintiff has failed to state a claim upon which relief can be granted under TILA, RESPA and the FDCPA, and it is **RECOMMENDED** that

Defendants' motions to dismiss those claims, asserted in Plaintiff's Count IV "Accounting and Failure to Disclose," be **GRANTED**.

## F.   Civil RICO (Count V)

Plaintiff asserts a claim for "Civil RICO" in Count V of her complaint, although she does not specify whether she brings her claim under federal or Georgia law.[13]   Plaintiff asserts her claim as follows:

> DEFENDANTS' actions and use of multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct specifically designed to defraud PLAINTIFFS constitutes an 'enterprise', with the aim and objective of the enterprise being to perpetrate a fraud upon the PLAINTIFFS through the use of intentional nondisclosure, material misrepresentation, and creation of fraudulent loan documents.

(Compl. at ¶ 133).   The undersigned finds that Plaintiff has failed to state a RICO claim upon which relief can be granted under either federal or state law.

"In order to state a private claim for relief under [federal] RICO, a person must allege that he has been injured in his business or property by reason of a violation of 18 U.S.C. § 1962." J.G. Williams, Inc. v. Regency Props, Ltd., 672 F. Supp. 1436, 1440 (N.D. Ga. 1987) (citing 18 U.S.C. § 1964(c)).   "The essential elements of a claim, such as this, alleging a violation of section 1962(c) are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Id. (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).   18 U.S.C.

---

[13] The federal RICO (Racketeer Influenced and Corrupt Organizations Act) statute is found at 18 U.S.C. § 1961 *et seq.*; the civil remedy provision is found at 18 U.S.C. § 1964.  The Georgia RICO statute is O.C.G.A. § 16-14-1 *et seq.*; its civil remedy provision is found at O.C.G.A. § 16-14-6.

§ 1961(1) sets forth what actions constitute "racketeering activity" and § 1961(5) provides that a " 'pattern of racketeering activity' requires at least two acts of racketeering activity . . . ."

The undersigned finds that Plaintiff has failed to allege facts that satisfy the elements of a federal RICO claim or that show Defendants engaged in "racketeering activity" under 18 U.S.C. § 1961(1) or a "pattern of racketeering activity" under 18 U.S.C. § 1961(5). Plaintiff simply makes conclusory allegations, largely derivative and repetitive of those discussed *supra*. These allegations are insufficient to state a claim under the federal RICO statute.

The same is true for a claim under Georgia's RICO statute. "[T]he Georgia RICO Act was enacted after the federal RICO statute and contains substantially the same operative language," and "[t]herefore, plaintiff's Georgia RICO claim fails for the same reasons as its federal counterpart." J.G. Williams, 672 F. Supp. at 1443.

Accordingly, it is **RECOMMENDED** that Defendants' motions to dismiss Plaintiff's "civil RICO" claim (Count V) be **GRANTED**.[14]

## G.   Conversion (Count VI)

Plaintiff asserts her claim for conversion as follows: "Defendants wrongfully converted the property of PLAINTIFF located at 2325 Wilson Drive SW Atlanta,

---

[14] In Coward v. First Magnus Fin. Corp., 2:09-cv-01143-RCJ-GWF, 2009 U.S. Dist. LEXIS 101846, at *14 (D. Nev. Oct. 14, 2009), the court dismissed the plaintiff's RICO claim because "RICO claims arising from garden-variety foreclosure actions are frivolous stalling actions that abuse the court system."

Fulton County to their own use." (Compl. at ¶ 138).  In the first place, Plaintiff's conclusory allegations are insufficient to state a claim for conversion.  Moreover, the claim fails as a matter of law.  " 'Conversion consists of an unauthorized assumption and exercise of the right of ownership over **personal property** belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation.' " Trey Inman & Assocs., P.C. v. Bank of Am., N.A., A10A1844, 2010 Ga. App. LEXIS 963, at *12-13 (Ga. App. Oct. 13, 2010) (quoting Maryland Cas. Ins. Co. v. Welchel, 356 S.E.2d 877, 880 (1987)) (emphasis added).  Under Georgia law, "[a]n action for conversion . . . will not lie to recover **real property**." Levenson v. Word,  668 S.E. 2d 763, 765 n. 2 (Ga. App. 2008) (citing Adams v. Chamberlin, 188 S.E. 550 (1936)) (emphasis added).[15]

Accordingly, it is **RECOMMENDED** that Defendants' motions to dismiss Plaintiff's conversion claim (Count VI) be **GRANTED**.

## H.   Breach of Contract and Theft (Count VII)

In the paragraphs of her complaint setting out this claim, Plaintiff restates the allegations in support of her "vapor money" theory (e.g., that she "funded her own loan with her Promissory note"), discussed *supra* in the analysis of Plaintiff's

---

[15] O.C.G.A. § 44-1-2 defines "realty" or "real estate," i.e., "real property," as "(1) All lands and the buildings thereon; (2) All things permanently attached to land or to the buildings thereon; and (3) Any interest existing in, issuing out of, or dependent upon land or the buildings thereon." O.C.G.A. § 44-1-3 defines "personalty" or "personal estate," i.e., "personal property," as "all property which is movable in nature, has inherent value or is representative of value, and is not otherwise defined as realty."  The property at issue in this lawsuit, i.e., the property at 2325 Wilson Drive, Atlanta, Georgia, is undisputably real property, not personal property.

"Accounting and Failure to Disclose Claim" (see Compl. at ¶¶ 113-16 and 142-47).

Plaintiff then makes a series of assertions, largely related to the "vapor money" theory, or calling into question the accounting principles underlying the transaction at issue.  (See Compl. at ¶¶ 148-53).  However, these allegations fail to state a claim for breach of contract or for theft, and therefore, it is **RECOMMENDED** that Defendants' motions to dismiss Plaintiff's breach of contract and theft claims (Count VII) be **GRANTED**.

## I.   <u>Plaintiff's Claims Against Transland</u>

Because it appears that Plaintiff did not serve the summons and complaint on Defendant Transland within 120 days of filing this complaint, and it does not appear that she has served Transland at any point since she filed her complaint, it is **RECOMMENDED** that Plaintiff's claims against Transland Financial Services be **DISMISSED** for failure to serve Transland as required by Fed. R. Civ. P. 4(m) and for failure to prosecute her claims against Transland pursuant to Fed. R. Civ. P. 41(b).

## IV.  <u>Conclusion</u>

For the reasons discussed above, it is **RECOMMENDED** that the motions to dismiss filed by Defendants U.S. Bank N.A. ("U.S. Bank"), GMAC Mortgage, LLC ("GMAC"), Homecomings Financial Services, LLC ("Homecomings") and Mortgage Electronic Registration Systems, Inc. ("MERS") [Doc. 15] and Defendants McCurdy and Candler, LLC ("McCurdy and Candler") and Anthony DeMarlo ("DeMarlo") [Doc. 17] be **GRANTED** and that Plaintiff's complaint be **DISMISSED**.

It is further **RECOMMENDED** that Plaintiff's claims against Defendant Transland Financial Services be **DISMISSED**.

The Clerk is **DIRECTED** to terminate the referral of this action to the undersigned magistrate judge.

**IT IS SO REPORTED AND RECOMMENDED**, this 26th day of January, 2011.

_Susan S. Cole_

SUSAN S. COLE
United States Magistrate Judge